**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JOSHUA CHRONICLES,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-26-1658** |
| **MOUSSA SILIMANA, *et al.*,** | * | |
| **Defendants** | * | |

# MEMORANDUM OPINION

On April 27, 2026, Joshua Chronicles filed a complaint for fraud and civil conspiracy against Moussa Silimana (individually and as the owner of MS Plaza Taxi Inc. ("MS Plaza")), MS Plaza, Moussa Sissoko, Fatoumata Sissoko, Amadou Silimana, and Fatima Silimana. On June 26, Chronicles filed an emergency motion for a temporary restraining order ("TRO") and a preliminary injunction "prohibiting Defendants Moussa Sissoko, Amadou Silimana, Fatima Silimana, and Hortense Silimana from making any further threatening, intimidating, or coercive contact with Plaintiff in connection with this federal litigation." ECF 19, at 1. On July 8, Chronicles filed a combined motion for alternative service of process on Moussa Silimana and MS Plaza and motion to show cause why Moussa Sissoko should not be held in civil contempt. ECF 26. For the following reasons, Chronicles's motion for a TRO and a preliminary injunction and his motion for alternative service and civil contempt are denied.

## I. Background

Chronicles alleges that Moussa Silimana and MS Plaza defrauded him of $21,000 through false representations that Moussa Silimana would deliver gold bullion to Chronicles after Chronicles paid him and that all defendants subsequently engaged in a civil conspiracy to prevent Chronicles from recovering those funds. ECF 1, at 7–9. Chronicles's original complaint included

claims for fraud, civil conspiracy, fraudulent transfer, and unjust enrichment. On June 25, Chronicles filed an amended complaint adding Hortense Silimana as a defendant and adding claims for intentional infliction of emotional distress and civil obstruction of justice/witness and party intimidation. ECF 16.

Fatima Silimana and Amadou Silimana were served with the original complaint on May 23, and Fatoumata Sissoko and Moussa Sissoko were served on June 4. ECF 12, 12-1, 14, 15. Moussa Sissoko filed a motion to dismiss. ECF 24. Amadou Silimana, Fatima Silimana, and Fatoumata Sissoko did not respond to the complaint. Chronicles sought, and the Clerk of Court entered, a default as to those three defendants. ECF 18, 20, 29, 32. After filing his amended complaint, Chronicles submitted a U.S. Marshal form for service of process, but he did not submit a summons for Hortense Silimana. ECF 17. It does not appear that Hortense Silimana has been served.

The day after he amended his complaint, Chronicles filed an emergency motion for a temporary restraining order and a preliminary injunction "prohibiting Defendants Moussa Sissoko, Amadou Silimana, Fatima Silimana, and Hortense Silimana from making any further threatening, intimidating, or coercive contact with Plaintiff in connection with this federal litigation." ECF 19, at 1. Chronicles contends that these defendants "engaged in a deliberate, systematic, and ongoing campaign of threatening telephone calls to Plaintiff throughout May and June 2026," starting shortly after Chronicles filed suit and involving "numerous and frequent" calls in which "each Defendant personally identified themselves by name and explicitly threatened to kill Plaintiff if he did not drop this lawsuit." *Id.* at 2.

**II. TRO and Preliminary Injunction**

Preliminary injunctions and TROs, which differ only in duration and the notice required, *see* Fed. R. Civ. P. 65, serve "to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit so as to preserve the court's ability to render a meaningful judgment on the merits." *Erie Ins. Exch. v. Md. Ins. Admin.*, 105 F.4th 145, 148 (4th Cir. 2024) (citation modified). "The purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends it was or will be harmed through the illegality alleged in the complaint." *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). They "are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (citation modified). To obtain a preliminary injunction or a TRO, Chronicles must establish four factors: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm if the Court denies preliminary relief; (3) that the balance of equities favors him; and (4) that an injunction is in the public interest. *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Chronicles must establish all four factors. *Id.* He fails at the first factor.

Chronicles's allegations that Moussa Sissoko, Amadou Silimana, Fatima Silimana, and Hortense Silimana are threatening him are relevant to his claims for intentional infliction of emotional distress, civil obstruction of justice/witness and party intimidation, and civil conspiracy. *See* ECF 16, ¶ 45 (alleging acts in furtherance of the civil conspiracy to include "Defendants' threatening phone calls to Plaintiff after this lawsuit was filed"); *id.* ¶ 58 (alleging intentional infliction of emotional distress through "death threats against a disabled veteran litigant to coerce

him into dropping a federal lawsuit"); *id.* ¶ 63 (alleging obstruction of justice "by making repeated threatening phone calls to Plaintiff demanding that he drop this case). Chronicles has not shown a likelihood of success on the merits of these claims.

Liability for intentional infliction of emotional distress "should be imposed sparingly and 'its balm reserved for those wounds that are truly severe and incapable of healing themselves.'" *Haines v. Vogel*, 249 A.3d 151, 163 (Md. Ct. Spec. App. 2021) (quoting *Figueiredo-Torres v. Nickel*, 584 A.2d 69, 75 (Md. 1991), and noting, as of 2021, "[a] claim for IIED has been sustained in Maryland four times"). Chronicles does not allege wounds that "are truly severe and incapable of healing themselves." *See id.* (citiation modified)

"Civil obstruction of justice" is not a cause of action. *See McCall v. Rounds*, No. CV 22-357-BAH, 2024 WL 4416888, at *3 (D. Md. Oct. 4, 2024) ("[O]bstruction of justice is not a cognizable civil claim[.]"); *Livingston v. Jones*, No. 219, Sept. Term 2018, 2019 WL 2152924, at *2 (Md. Ct. Spec. App. May 16, 2019) ("[T]here is no civil cause of action in Maryland for obstruction of justice.").

And "civil conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 494 (Md. 2006) (citation modified). Because Chronicles is not likely to succeed on his intentional infliction of emotional distress claim and cannot succeed on his civil obstruction of justice claim, he is not likely to succeed on his civil conspiracy claim.

Chronicles has not shown the circumstances here are the "limited circumstances" in which a court should grant the extraordinary remedy of preliminary injunctive relief. *See MicroStrategy*, 245 F.3d at 339. Chronicles's motion for a TRO and a preliminary injunction is denied.

## III. Motion for Alternative Service

On July 8, Chronicles filed a verified motion for alternative service of process on Moussa Silimana and MS Plaza and a motion to show cause why Moussa Sissoko should not be held in civil contempt. ECF 26, at 1, 12. Chronicles contends that Moussa Silimana is "hiding in Bamako, Mali to evade service of process." *Id.* at 2. Chronicles insists that Moussa Sissoko "admitted in his own court filing that he is Silimana's cousin and can contact him directly." *Id.* Chronicles asks the Court (1) to "order [Moussa] Sissoko to provide Defendant Silimana's current address in Bamako, Mali and to accept service of process on Silimana's behalf as his confirmed associate and contact, pursuant to Federal Rule of Civil Procedure 4(f)(3)," (2) to "authorize alternative service on Silimana through WhatsApp at his confirmed number +223 75 60 09 35, which Sissoko's own filing has authenticated," and (3) to warn Sissoko that failure to comply with this Court's order will result in a finding of contempt." *Id.*

In this Court, under Federal Rule of Civil Procedure 4, service of process on an individual must either comport with Rule 4(e)(2), Maryland law, or if the defendant is served in another state, the law of the state where the defendant is served. Fed. R. Civ. P. 4(e)(1), (h)(1). Rule 4(e) and Maryland law together provide four options for service on an individual in or outside of Maryland: (1) by delivering a copy of the summons, complaint, and all other papers filed with it to the individual personally; (2) leaving a copy of each at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; (3) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(e)(2); or (4) mailing a copy of each to the individual by certified mail requesting "Restricted Delivery – show to whom, date, address of delivery," Md. Rule 2-121(a). Rule 4(f) states that if a defendant is in a foreign country, they can be served "by any internationally agreed means"; or if there are none,

according to laws for service in the foreign country, "as the foreign authority directs in response to a letter rogatory or letter of request, or if allowed by the foreign country, in person or by mail requiring a signed receipt; or "by other means not prohibited by international agreement, as the court orders." If a plaintiff proves "by affidavit that a defendant has acted to evade service," the Court may order alternative service to "be made by mailing a copy of the summons, complaint, and all other papers filed with it to the defendant at the defendant's last known residence and delivering a copy of each to a person of suitable age and discretion at the place of business of the defendant." Md. R. 2-121(b). And if service pursuant to Md. R. 2-121(b) "is inapplicable or impracticable, the court may order any other means of service that it deems appropriate in the circumstances and reasonably calculated to give actual notice." Md. R. 2-121(c).

Chronicles has not established that Moussa Silimana has attempted to evade service. First, Chronicles has not shown that service on Moussa Silimana has been attempted at his most recent address. The U.S. Marshal's Service filed a service of process receipt stating that the certified mailing of the complaint and summons to Moussa Silimana at 230 S. Dilger Ave., Apt. 3, Waukegan, Illinois 60085 had been "return[ed] as unexecuted" because the U.S. Postal Service had been "unable to locate" the addressee and the mail was "not deliverable as addressed." ECF 27. The address for that service attempt was the address Chronicles provided in his original complaint and summons. ECF 1, ¶ 11; ECF 9, at 4. When Chronicles filed his amended complaint, he submitted a U.S. Marshal form with a new address for Moussa Silimana—1 Great America Parkway, Gurnee, Illinois 60031—but he did not submit a new summons. *See* ECF 17. There is no proof that service has been attempted at this address.

Moreover, Chronicles's allegations of evasion of service are unsubstantiated. He states in his verified motion that Moussa Silimana is "hiding in Bamako, Mali to evade service of process."

ECF 26, at 2. But he bases that assertion on the screenshots Mousa Sissoko attached to his motion to dismiss. *Id.* at 4. Those screenshots show text messages from four different unidentified numbers stating that Moussa Sissoko is Moussa Similana's cousin, that Moussa Silimana is hiding in Mali to avoid paying money he owes pursuant to the Louisiana judgment, and that +223 75 60 09 35 is Moussa Siliman's WhatsApp number. *See* ECF 24-1, at 4–5, 8. Moussa Sissoko did not state that this information is correct. Rather, Moussa Sissoko asserted that in "[e]arly April 2026, [he] started to receive random phone calls and text messages from unknown numbers," and he attached the screenshots to illustrate the text messages he received. ECF 24, at 1. The Court will not rely on unauthenticated text messages from an unknown sender to establish the truth of their contents. Additionally, the messages, even if reliable, would only show that Moussa Silimana was trying to avoid making payments, not that he was evading service. Without proof that Moussa Silimana cannot be served at his last known address and that he is acting to evade service, the Court will not order alternative service of process.

The Court also will not hold Moussa Sissoko in civil contempt. The Court has the inherent authority to exercise its discretion to hold a party in civil contempt for violation of a court order. *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020); *Rainbow School, Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018). "The essence of civil contempt . . . is to coerce compliance with judicial orders. And sometimes an award of damages is necessary to incentivize compliance." *Klopp*, 957 F.3d at 461 (citation modified). Moussa Silimana has not violated any order issued by this Court. Chronicles's motion for civil contempt is denied.

## IV. Conclusion

For the reasons stated above, it is this 2nd day of November, 2026, by the United States District Court for the District of Maryland hereby ORDERED:

1. Chronicles's motion for a TRO and a preliminary injunction, ECF 19, IS DENIED;
2. Chronicles's motion for alternative service and contempt of court, ECF 26, IS DENIED;
3. Moussa Sissoko's motion to dismiss, ECF 24, remains pending and will be resolved in due course;
4. The Clerk SHALL MAIL a copy of this order to Chronicles and Moussa Sissoko.

Deborah L. Boardman
United States District Judge